## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Paul F. Kilmer, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **VERIFIED COMPLAINT FOR** |
| | ) **DECLARATORY AND** |
| | ) **INJUNCTIVE RELIEF FOR** |
| | ) **VIOLATION OF FREEDOM OF** |
| | ) **INFORMATION ACT, 5 U.S.C. § 552** |
| | ) **et. seq.** |
| v. | ) |
| | ) Case No. _____ |
| | ) |
| | ) |
| | ) |
| U.S. Customs and Border | ) |
| Protection, | ) |
| | ) |
| Defendant. | ) |
| | ) |

### INTRODUCTION

1.      Paul F. Kilmer ("Plaintiff") brings this action under the Freedom of Information

Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, as amended, to obtain injunctive and other appropriate

relief requiring Defendant U.S. Customs and Border Protection ("CBP" or "Defendant") to

identify documents and information response to a FOIA request submitted by Plaintiff to CBP

on January 29, 2017 ("Request")(copy attached hereto as **Exhibit A**), and to promptly disclose

and produce the requested records, and provide a "Vaughn Index" as to any records Defendant

refuses to provide to Plaintiff, in whole or in part.

2.      The Request seeks CBP records for the period January 19, 20 and 21,

2017, concerning CBP's actions, or actions by its employees, to, *inter alia*, bar

1

certain residents of Canada from attending Women's March events and activities in the United States, and related matters.

3.  Specifically, the Request seeks CBP records concerning:

A.  Documents referring to, relating to or mentioning the Women's March (or Women's Marches) scheduled to be held on January 21, 2017, that also mention or refer to persons entering or who might enter the United States from Canada.

B.  Documents mentioning, referring to or otherwise relating to any person or persons denied entry to the United States from Canada on January 19, January 20 or January 21, 2017, including the reason or reasons such persons were denied entry to the United States.

C.  Documents consisting of, referring to or relating to orders, directives, guidance or suggestions of any nature that persons attempting to enter the United States from Canada on January 19, January 20 or January 21, 2017, should be barred from entry if such persons might be entering the United States to participate in the Women's March.

D.  Documents consisting of, referring to or relating to communications (verbal or in writing) from any person or persons alleging that they were denied entry into the United States from Canada on January 19, January 20 or January 21, 2017.

E. Documents consisting of a report, memorandum or communication from any official, officer, employee or contractor of the CBP regarding persons denied entry to the United States from Canada on January 19, January 20 or January 21, 2017.

F. Documents consisting of, including or mentioning any communications (verbal or in writing) from officials or employees of any branch, division, agency or other body of the government of Canada, or any Province or municipality thereof, regarding allegations that persons were denied entry to the United States from Canada on January 19, January 20 or January 21, 2017.

(collectively hereinafter "Requested Information and Material")

4.      The Request is based, in part, on numerous press reports in late-January 2017, indicating that certain persons from Canada were denied entry to the United States when they disclosed that their intent in entering this country was to participate in Women's March activities and events on January 21, 2017.  Copies of certain of those articles are attached hereto as **Exhibit B** and are also available at the links provided in the footnote below.[1]

---

[1]   http://www.cbc.ca/radio/asithappens/as-it-happens-friday-edition-1.3944955/we-didn-t-have-anything-to-hide-canadian-heading-to-women-s-march-refused-entry-to-u-s-1.3944962

http://www.cnn.com/2017/01/21/us/canadians-rejected-border-womens-march/

https://www.washingtonpost.com/news/worldviews/wp/2017/01/21/u-s-border-agents-turned-away-canadians-hoping-to-come-to-the-womens-march/?utm_term=.76c3651552a5

5.      When the Requested Information and Material was not provided within the statutory period, Plaintiff sent a follow-up communication to CBP on March 13, 2017, soliciting a response to the Request, which Request had by then been assigned number CBP-2017-026542.  See **Exhibit C** hereto.

6.      On or about March 17, 2017, CBP sent Plaintiff an email communication denying that CBP had information responsive to someone else's FOIA request (one Alicia Caldwell of The Associated Press, whose FOIA request was assigned number CBP-2014-017383).  A copy of that apparently misdirected communication is attached as **Exhibit D**.

7.      Subsequent to receiving the misdirected response to Ms. Caldwell's FOIA request, Plaintiff contacted CBP at telephone number (202) 344-1610 on three separate occasions and, failing to reach a CBP employee, on each of those three occasions Plaintiff left phone messages on a recording device.

8.      Two of Plaintiff's telephone messages to CBP were returned by an individual identifying himself only as "Don".  Those telephone calls took place on March 22, 2017 and April 3, 2017.  Despite "Don's" assurances that he would obtain an appropriate response to Plaintiff's FOIA Request, no response was forthcoming.

9.      On or about April 8, 2017, Plaintiff filed his first agency appeal regarding the Request.  A copy of that agency appeal is attached as **Exhibit E**.   Plaintiff requested a response to his appeal by April 28, 2017.

10.      In a letter dated March 15, 2017, which arrived in an envelope postmarked

https://www.theguardian.com/world/2017/jan/20/womens-march-canada-protesters-denied-entry-us

http://www.independent.co.uk/news/world/uk-canadian-womens-march-protesters-denied-entry-us-montreal-border-agents-a7539341.html

http://www.huffingtonpost.ca/2017/01/21/canadian-us-border_n_14306832.html

"04/27/2017" (copies attached as **Exhibit F**) Plaintiff was advised that CBP had allegedly

"conducted a comprehensive search of files within the CBP databases for records that would be

responsive to [Plaintiff's] request" and was "unable to locate or identify any responsive records . . ."

11.     On June 10, 2017, Plaintiff filed a second agency appeal with CBP.  See **Exhibit G**

hereto (without attachments).

12.     To date, Plaintiff has not received a response from CBP to his second agency

appeal of June 10, 2017.

## JURISDICTION

13.     This Court has subject-matter jurisdiction over this action and personal jurisdiction

over the parties under 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. §§ 701-706, and 28 U.S.C. § 1331.

## VENUE

14.     Venue in this District is proper under 5 U.S.C. § 552(a)(4)(B) as Plaintiff's

residence is in the District of Columbia and CBP has offices in this District and employees and

officers who perform some or all of the duties within the scope of their employment in the District

of Columbia, including responding to FOIA requests, such as the Request of the Plaintiff.  CBP also

has employees within this District who supervise and oversee matters surrounding, relating to and

entailing entry of persons into the United States from, *inter alia*, Canada. Additionally, at least

some of the requested agency records are, upon information and belief, situated within this

District and the actions of the Defendant had a direct impact upon the District of Columbia in that

some of the persons denied entry to the United States on the dates relevant to the Request intended

to travel to the District of Columbia for purposes of participating in Women's March activities and

events.  It is also the case that communications from CBP to Plaintiff regarding the

subject matter of this action originated in this District and were delivered to the

Plaintiff within this District.  For these reasons venue also is proper under 28 U.S.C. § 1391 (e).

## PARTIES

15.     Plaintiff is an individual citizen of the United States residing at 3609 Appleton Street, N.W., Washington, D.C. 20008, and an attorney duly licensed in the District of Columbia and admitted to practice before this Court.

16.     Defendant U.S. Customs and Border Protection is a component of the Department of Homeland Security and is a federal agency within the meaning of 5 U.S.C. § 552(f)(1).

17.     Plaintiff is informed and therefore believes that Defendant has possession, custody, or control of the requested records.

## FACTS

18.     The allegations contained in paragraphs 2 through 12, above, are realleged herein by reference and made a part of the factual allegations of his Complaint.

19.     As of the date of this Complaint, CBP has failed to identify or provide information and material responsive to the Request.

20.     As of the date of this Complaint, CBP has failed to respond to Plaintiff's timely-filed agency appeal of June 10, 2017.

21.     There is ample support in press reports, including those submitted in **Exhibit B** hereto, that persons travelling from Canada on the dates relevant to the Request (i.e. January 19, 20 and 21, 2017) were denied entry to the United States by CBP after those individuals disclosed to CBP employees that they were traveling to this country to participate in Women's March events and activities.

22.     Women's March events and activities held on January 21, 2017, were lawful and peaceful, posed no risk to the safety or security of the United States, and did not present a threat to the safety, integrity or security of the U.S. border with Canada.

23.     Canada is not an enemy of the United States, and is in fact an ally of this country, and the two nations have shared a common peaceful and largely unguarded border for many decades.

24.     There was no lawful justification or basis for CBP or its employees to deny entry to the United States to any person or persons traveling from Canada to this country on January 19, 20 and 21, 2017, for purposes of participating in Women's March events and activities.

25.     On information and belief, CBP or its employees denied entry to the United States to persons wishing to travel from Canada to this country on some or all of January 19, 20 and 21, 2017.

26.     In the alternative, CBP's allegation in its response to the Request that it was unable to locate or identify any records responsive thereto constitutes an admission that neither CPB nor any of its employees denied entry to the United States to any person or persons attempting to travel from Canada to the United States on January 19, 20 or 21, 2017.

27.     On information and belief, CBP or its employees made records regarding persons from Canada denied entry to the United States on January 19, 20 and 21, 2017.

28.     In the alternative, CBP's allegation in it response to the Request that it was unable to locate or identify any records responsive thereto constitutes an admission that CBP and its employees made no records regarding persons from Canada denied entry to the United States on January 19, 20 or 21, 2017.

29.     On information and belief, as of the date of the Request (January 29, 2017), CBP still had possession and custody of records regarding persons from Canada who were denied entry to the United States on January 19, 20 or 21, 2017.

30.     In the alternative, CBP's admission in its response to the Request that it has no records responsive thereto constitutes an admission by CBP that it failed in its responsibility, duty

and obligation to retain records regarding persons from Canada denied entry to the United States on January 19, 20 or 21, 2017.

31.    On information and belief, the CBP records referenced in paragraph 29 of this Compliant, above, are responsive to the Request but have not been identified or provided to Plaintiff in response to the Request as is required by the provisions of the FOIA.

32.    On information and belief, the CBP has Requested Information and Material responsive to some or all of the matters set forth in the Request and, contrary to law, has failed to identify or produce such records in response to the Request.

33.    Because Defendant failed to comply within the time limits provided for under the FOIA, Plaintiff is deemed to have exhausted his administrative remedies with respect to the Request.

### Violation of FOIA for Failure to Make Records Available

34.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 33 above, inclusive.

35.    Plaintiff has a legal right under FOIA to obtain the specific agency records requested by him on January 29, 2017 and there exists no legal basis for Defendant's failure to promptly identify and make the Requested Information and Material available to Plaintiff.

36.    Defendant's failure to promptly make available to Plaintiff the Requested Information and Material sought by the Request violates FOIA, 5 U.S.C. § 552(a)(3)(A), and applicable regulations promulgated thereunder.

37.    On information and belief, Defendant currently has possession, custody or control of the Requested Information and Material.

**WHEREFORE,** Plaintiff requests that the Court award him the following relief:

1.      Declare that Defendant violated FOIA by failing to identify the Requested Information and Material;

2.      Declare that Defendant violated FOIA by unlawfully withholding the Requested Information and Material;

3.      Order Defendant to immediately disclose the Requested Information and Material to the Plaintiff and make copies immediately available to Plaintiff without charge for any search or duplication fees, or, in the alternative, provide for expedited proceedings to adjudicate Plaintiff's rights under FOIA;

4.      Appoint a special master or Magistrate Judge to oversee Defendant's production of the Requested Information and Material, including forensic analysis of computer and other digital records of the Defendant, to ensure that a complete production of the Requested Information and Material is made to Plaintiff;

5.      As to any Requested Information and Material responsive to Plaintiff's Request that Defendant wishes to withhold or redact for any reason as being exempt from disclosure, to provide Plaintiff with an itemized, indexed inventory thereof accompanied by a justification statement covering each such refusal to release records or portions thereof in accordance with the requirements of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973, cert. denied, 415 U.S. 977 (1974).

6.      Award Plaintiff his reasonable costs and attorneys' fees; and

7.      Grant such other and further relief as the Court may deem just and proper.

## DECLARATION PURSUANT TO 28 U.S.C. §1746

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Respectfully submitted,

Paul F. Kilmer
D.C. Bar Number: 331835

Executed on: July 31, 2017

# EXHIBIT A

January 29, 2017

U. S. Customs & Border Protection (CBP)
FOIA Officer
1300 Pennsylvania Avenue, NW, Room 3.3D
Washington, D.C. 20229
FOIA Officer/Public Liaison: Sabrina Burroughs
Phone: 202-344-1610
https://foiaonline.regulations.gov/foia/action/public/request/publicPreCreate

Attention:  FOIA Officer

This is a request under the Freedom of Information Act (FOIA).

Reports indicate that persons attempting to enter the United States from Canada to participate in the Women's March held on Saturday, January 21, 2017, were denied entry to this country (see e.g. http://www.independent.co.uk/news/world/uk-canadian-womens-march-protesters-denied-entry-us-montreal-border-agents-a7539341.html [Canadians denied entry to US by border guards 'because they were joining Women's March' Canadian and British protesters heading to the Women's March in Washington have been denied entry to the United States. Joe Kroese, a British man studying in Montreal, told the Independent he was refused entry into the country after a border agent told him he was planning to attend a "potentially violent rally".]

This FOIA request is targeted to determining whether such reports have a basis in fact.

Note that the term "documents" as used herein shall mean and include not only physical documents printed or reduced to writing but also electronic records of any description, photographs, videos, sound recordings or other means by which information or images may be stored and/or reproduced, in addition to email and other forms of electronic communication of any description including, but not limited to, text messages and messages sent via any form of social media. The term "documents" shall also mean and include records of verbal communications (whether such communications occurred in face-to-face meetings or discussions or via telecommunications devices or facilities), instructions, minutes, reports, calendar entries, inter-office communications, bulletins, circulars, statements, manuals, summaries, maps, charts, graphs or statistical material or information.  A document bearing any notation not a part of the original text is to be considered a separate document.  A draft or non-identical copy is also to be considered a separate document.

As used herein "CBP" shall mean and include U. S. Customs & Border Protection and any agencies of the United States Government with which it shared information or documents, or from which it received information or documents, during the time periods specified in this request in relation to the subject matter hereof.

I hereby request that a copy of the following documents, or documents containing the following information, be provided to me:

1.  Documents referring to, relating to or mentioning the Women's March (or Women's Marches) scheduled to be held on January 21, 2017, that also mention or refer to persons entering or who might enter the United States from Canada.

2.  Documents mentioning, referring to or otherwise relating to any person or persons denied entry to the United States from Canada on January 19, January 20 or January 21, 2017, including the reason or reasons such persons were denied entry to the United States.

3. Documents consisting of, referring to or relating to orders, directives, guidance or suggestions of any nature that persons attempting to enter the United States from Canada on January 19, January 20 or January 21, 2017 should be barred from entry if such persons might be entering the United States to participate in the Women's March.

4. Documents consisting of, referring to or relating to communications (verbal or in writing) from any person or persons alleging that they were denied entry into the United States from Canada on January 19, January 20 or January 21, 2017.

5. Documents consisting of a report, memorandum or communication from any official, officer, employee or contractor of the CBP regarding persons denied entry to the United States from Canada on January 19, January 20 or January 21, 2017.

6. Documents consisting of, including or mentioning any communications (verbal or in writing) from officials or employees of any branch, division, agency or other body of the government of Canada, or any Province or municipality thereof, regarding allegations that persons were denied entry to the United States from Canada on January 19, January 20 or January 21, 2017.

In order to help you determine my status for purposes of assessing fees for this request, you should know that I am an individual seeking information for non-commercial use. I am willing to pay fees for this request up to a maximum of $100. If you estimate that the fees will exceed this limit, please inform me in advance and provide me with an estimate of the total fees required to respond to this request.

Despite my willingness to pay fees as noted above, I nevertheless request a waiver of all fees for this request. Disclosure of the requested information to me is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not in my commercial interest. Specifically, the requested information will assist the pubic in determining whether persons attempting to enter the United States from Canada during the period from January 19th to 21st, 2017, were denied entry and, if so, for what reason(s), including in particular whether such persons were denied entry because they wished to participate in lawful marches and demonstrations. It is my intention to provide the requested information to media outlets known to me.

Thank you for your consideration of this request.

Sincerely,

/Paul Kilmer/

Paul F. Kilmer
3609 Appleton Street, NW
Washington, D.C. 20008
(202) 237-2899

EXHIBIT B



# Canadians traveling to Women's March denied US entry after sharing plans

After telling border agents their plans to march, group's cars were searched and phones examined, and each person was fingerprinted and had their photo taken

**Ashifa Kassam in Toronto**

Saturday 21 January 2017 08.33 EST

Would-be protesters heading to the Women's March on Washington have said they were denied entry to the United States after telling border agents at a land crossing in Quebec their plans to attend the march.

Montrealer Sasha Dyck was part of a group of eight who had arranged online to travel together to Washington. Divided into two cars, the group - six Canadians and two French nationals - arrived at the border crossing that connects St Bernard de Lacolle in Quebec with Champlain, New York, on Thursday.

The group was upfront about their plans with border agents, Dyck said. "We said we were going to the women's march on Saturday and they said, 'Well, you're going to have to pull over'."

What followed was a two-hour ordeal. Their cars were searched and their mobile phones examined. Each member of the group was fingerprinted and had their photo taken.

Border agents first told the two French citizens that they had been denied entry to the US and informed them that any future visit to the US would now require a visa.

"Then for the rest of us, they said, 'You're headed home today'," Dyck said. The group was also warned that if they tried to cross the border again during the weekend, they would be arrested. "And that was it, they didn't give a lot of justification."

Dyck described it as a sharp contrast to 2009, when the research nurse made the same journey to attend Barack Obama's inauguration. "I couldn't even get in for this one, whereas at the other one, the guy at the border literally gave me a high five when I came in and everybody was just like, 'welcome'. The whole city was partying; nobody was there to protest Obama the first time."

UK national Joe Kroese said he, a Canadian and two Americans were held at the same border crossing for three hours on Thursday.

The group had travelled from Montreal, where 23-year-old Kroese is studying, and had explained to border agents that they were considering attending the Women's March but had yet to finalise their plans.

After being questioned, fingerprinted and photographed, Kroese and his Canadian companion were refused entry because they were planning to attend what the border agent called a "potentially violent rally", he said. The pair was advised not to travel to the United States for a few months, and Kroese was told he would now need a visa to enter the US.

After an attempted crossing late Thursday, Montreal resident Joseph Decunha said he was also turned away. He and the two Americans he was with told the border agent that they were planning to attend the inauguration and the women's march.

The group was brought in for secondary processing, where the border agent asked about their political views, Decunha told the Canadian Broadcasting Corporation. "The first thing he asked us point blank is, 'Are you anti- or pro-Trump?'"

After being fingerprinted and photographed he was told that his two friends could enter the US, but that he could not. "They told me I was being denied entry for administrative reasons. According to the agent, my travelling to the United States for the purpose of protesting didn't constitute a valid reason to cross," Decunha said.

He described the experience - particularly the questions he fielded about his political beliefs - as concerning. "It felt like, if we had been pro-Trump, we would have absolutely been allowed entry."

US Customs and Border Protection said it could not discuss individual cases, citing privacy reasons. "We recognize that there is an important balance to strike between securing our borders while facilitating the high volume of legitimate trade and travel that crosses our borders every day, and we strive to achieve that balance and show the world that the United States is a welcoming nation," it said in an email to the Guardian.

On a daily basis, more than 1 million individuals are admitted into the United States at its air, land and sea ports, the agency noted. An average of 600 people a day - less than a tenth of 1% of those admitted - are denied entry for a varied list of reasons that include prohibited activities or intent as well as national security concerns.

# Since you're here ...

... we have a small favour to ask. More people are reading the Guardian than ever but advertising revenues across the media are falling fast. And unlike many news organisations, we haven't put up a paywall - we want to keep our journalism as open as we can. So you can see why we need to ask for your help. The Guardian's independent, investigative journalism takes a lot of time, money and hard work to produce. But we do it because we believe our perspective matters - because it might well be your perspective, too.

I appreciate there not being a paywall: it is more democratic for the media to be available for all and not a commodity to be purchased by a few. I'm happy to make a contribution so others with less means still have access to information. *Thomasine F-R.*
If everyone who reads our reporting, who likes it, helps to support it, our future would be much more secure.

Become a supporter
Make a contribution
Topics
- Canada
- Women
- Donald Trump inauguration
- Americas
- news

# The Washington Post

**WorldViews**

# U.S. border agents turned away Canadians hoping to come to the Women's March

**By Amanda Erickson**  January 21

The plan was simple. Montrealer Sasha Dyck and some friends would drive to Washington to join the Women's March. But when the six Canadians and two French nationals reached the border at Saint-Bernard-de-Lacolle, in Quebec, they ran into trouble.

U.S. border agents asked what they planned to do in the United States. "We said we were going to the Women's March on Saturday and they said, 'Well, you're going to have to pull over,' " Dyck told the Guardian. Agents then searched their car and examined their cellphones, according to Dyck. Each member of the group was fingerprinted and had their pictures taken.

Finally, after two hours, the agents told Dyck and his friends to turn around. "They said, 'You're headed home today,' " Dyck told the Guardian. Officials warned that they'd be arrested if they tried to cross at a different spot this weekend, Dyck said. "And that was it, they didn't give a lot of justification."

The two French citizens were told that they'd now need a visa if they wanted to enter the United States. French and British citizens can enter the United States without a visa if they apply for clearance through the Electronic System for Travel Authorization. But if your ESTA application is denied, or if you're turned away at the border, you're required to have a visa to enter the country in the future.

Dyck says he has traveled to the United States before without incident. In 2009, he drove to D.C. for Barack Obama's inauguration. When he crossed into New York, Dyck said, the agent gave him a high-five.

Other travelers reported similar struggles this weekend.

British national Joe Kroese and a Canadian were turned away from the same border crossing on Thursday as they traveled with two American friends.

Kroese, 23, was asked by an American border agent why he was traveling to the United States. He told guards that his friends planned to attend the Women's March, though they hadn't worked out all their plans yet. At that point, Kroese and the Canadian were fingerprinted, photographed and denied entry. Agents allegedly told them it was because they wanted to attend a "potentially violent rally," according to Kroese.

Although the two Americans were granted entry, agents told Kroese, who is studying at McGill University, that he'll now need a visa to travel across the border. The Canadian was told not to try to cross into the United States again for a couple of months.

Montreal resident Joseph Decunha said he was also turned away on Thursday. A border agent asked for his political views, Decunha told the Canadian Broadcasting Corporation." The first thing he asked us point blank is, 'Are you anti- or pro-Trump?' " he said.

He was then fingerprinted and photographed. "They told me I was being denied entry for administrative reasons. According to the agent, my traveling to the United States for the purpose of protesting didn't constitute a valid reason to cross," Decunha said. The guards also asked why he disapproved of Trump, whether he'd ever visited the Middle East, and whether Dechunha believed in violence.

"I've never been denied entry at any border crossing before. I have no criminal record. I've never done anything illegal in Canada or in any other country," Decunha said. "It felt like, if we had been pro-Trump, we would have absolutely been allowed entry."

In a statement, U.S. Customs and Border Protection said that they don't discuss individual cases. But they said border officers have the discretion to deny entry for a variety of reasons, including improper travel documents, interest in participating in prohibited activities, smuggling of contraband or prohibited goods and a history of criminal activity or immigration.

"We recognize that there is an important balance to strike between securing our borders while facilitating the high volume of legitimate trade and travel that crosses our borders every day, and we strive to achieve that balance and show the world that the United States is a welcoming nation," spokesperson Carlos A. Diaz wrote.

About a million people cross into the United States from 330 land, air and sea ports around the country each day. On average, just 600 people — less than 1 percent — are denied access daily, according to Customs and Border Protection, for "a varied list of reasons that include prohibited activities or intent as well as national security concerns."

Amanda Erickson writes about foreign affairs for The Washington Post. Previously, she worked as an editor for Outlook and PostEverything. ✈ Follow @AmandaWaPo

# As It Happens

with Carol Off and Jeff Douglas

Friday January 20, 2017

# 'We didn't have anything to hide': Canadian heading to Women's March refused entry to U.S.

Joseph Decunha had plans to spend the weekend in Washington, D.C. for the Women's March.

On Thursday night, the McGill student, along with two American companions, began the drive from Montreal to the U.S. capital. But when they hit the border, DeCunha was told by border guards that the Women's March wasn't a good enough reason for him to get into the United States.

Decunha isn't the only Canadian to encounter issues while trying to cross the border to get to Washington.

He spoke to *As It Happens* guest host Helen Mann about his experience.

- RELATED: Montrealer heading to Donald Trump inauguration turned away at border
- RELATED: Canadian photojournalist detained for hours, refused entry to U.S.
- RELATED: Canadian barred from U.S. for life because he admitted he smokes pot

**Helen Mann:** Mr. Decunha, at what point did you realize that the border guards might have concerns about your weekend plans?

**Joseph Decunha:**  [Me], my partner Ruth and a good friend of mine, Malcolm - the two of them are American citizens and I'm a Canadian - pulled up at the Lacolle border crossing at about 10

hide. We were open about our plans, handed them our passports, explained that we would be going down for the Inauguration. We weren't yet sure what we would be doing on the day of the Inauguration, but we would be attending the Women's March the day after on the Saturday.

**HM:** And was that the point where they said to you, "Just a minute?"

**JD:** Yep, pretty much. At that point, they decided that they were sending us to secondary [inspection]. It wasn't yet clear to me at that point that they were sending us over for that reason. I thought, "You know, they see a car of 20 somethings. They just want to search it."

But looking back, and hearing the stories of other travellers who were stopped at the border, I think it's clear to me that as soon as they heard that we would be attending the Women's March, that was the moment they were going to send us in for secondary inspection.

**HM:** What was involved in that secondary process? What kind of questions were you asked?

**JD:** The first question that he asked point blank was, "Are you anti or pro-Trump? At that time, I just assumed that he was just trying to feel out our opinions and what we were doing. We all expressed that we were anti. We simply had nothing to hide.

He took a lot of interest in my opinions in particular. I'm assuming because I was the only Canadian there. At this point, he was quite friendly. He engaged me in a bit of conversation about why I oppose Trump and I spoke about the Affordable Care Act and some of the outrageous statements that he's made towards minorities.

Then from there, the questioning moved on and I believe the border guard was just trying to determine if we were extremists or not. He asked about where I'd been, if I'd ever been to the Middle East. He asked about my political engagements. I explained I've been a member of the NDP in the past.

- **RELATED:** Montrealers bound for Trump inauguration turned away at border

**HM:** How long did it take before he told you you're not crossing?

**JD:** We probably only spoke for maybe four or five minutes. And at the end of that encounter, he made that statement, "I'm going to be upfront with you." And then he stopped and said, "I need to go and speak with my supervisor." We sat down for a few moments and he called us back up. He explained that both Ruth and Malcolm would be able to cross because they are American citizens but I would not be able to cross as a Canadian citizen for the sole purpose of participating in any sort of demonstrations.

*guard was going to allow me to cross. So, I was mostly quiet.*

- Joseph DeCunha, Canadian denied at the U.S. border

It was at this time that he started to throw some sort of pseudo legal jargon at us. He used the phrase "silent disruption" to characterize what I would be doing there. He said, "Would you agree that by standing in these crowds, that even though you may be a pacifist, that you would be disrupting events?"

**HM:** And what did you answer?

**JD:** I felt so powerless in that situation. I assumed that no amount of arguing with a border guard was going to allow me to cross. So, I was mostly quiet.

Ruth, on the other hand, was quite upset and engaged the border guard. His arguments started to fall apart. [Ruth] mentioned that the Women's March has permits from the Metropolitan Police Department and the National Park Service. It's not like we're participating in anything illegal. [The guard] dropped the term "silent disruption" a few more times and then tried to explain that there were a series of bins Canadians have to fall into when they're entering the United States. One of those things can be tourism, one of those things can be for work or whatever it may be in that attending a march of any sort wouldn't fall into one of those bins.

At this point, it was made clear to us that if I had been attending in support of Donald Trump and attending the Inauguration as a happy onlooker, that probably would have fallen under tourism and I would have been allowed to cross.

**HM:** Did anyone directly say to you that if you were a Trump supporter going for the Inauguration, we'd let you cross?

**JD:** I don't believe that any guard would dare to say those words because it's so incriminating of themselves. They [also] asked me, "Would you characterize this event as an anti-Trump event?" I explained that while the event doesn't market itself as being anti-Trump, everything that it stands for is opposed to what the Trump administration believes.

**HM:** U.S. border guards can refuse entry for any reason and they have complete discretion. So, I have to wonder if you were trying to make a point in saying what you said to them right from the start.

**JD:** We weren't trying to make any points whatsoever. We weren't aware that entering the United States to attend a march was something that we had to hide. We felt that we had nothing to hide. And just like individuals should do at any border crossing, we were forthcoming with what we intended to do and we didn't lie about that whatsoever.

*This transcript has been edited for length and clarity. For more on this story, listen to our full interview with Joseph Decunha.*

### Most Recent

Meet Lord Buckethead, the U.K. election's intergalactic spacelord

'Appeal to the young people': Millennials put their vote behind Jeremy Corbyn

June 8, 2017 episode transcript

Canadians say they were denied entry to US for Women's March - CNN.com          Page 1 of 3

---

**NEWS ALERT**                                                                    ✕

Jelena Ostapenko upsets Simona Halep 4-6 6-4 6-3 in French Open women's singles final
to clinch first grand slam title

U.S. +                                                                            Live TV

---

# Canadians say they were turned away at US border on way to Women's March

**By Kayla Rodgers, Faith Robinson and Madison Park,
CNN**

🕓 Updated 6:36 PM ET, Sat January 21, 2017

## Story highlights

Two groups of Canadians say they were
denied entry by US border agent

US Border Patrol and Customs has not
responded to CNN request for comment

**(CNN)** — At least two Canadians say they were
turned away at the US border after revealing that
they intended to go to the Women's March.

Joseph Decunha said he had driven to a border
crossing between Champlain, New York and St.
Bernard de Lacolle, Quebec, with his partner and
friend who are both Americans, on Thursday night.

"Upon arrival, we told the border patrol officer we're
heading down to DC and will be attending the
Women's March and will be in DC the day of the inauguration," he told CNN.

The group was asked to go through a secondary inspection.



Joseph Decunha said he was denied
entry into the US after telling a border
official he planned to participate in the
Women's March in Washington DC.

At the second border inspection, they were asked
if they were pro- or anti-Trump, Decunha said.

"We were honest and said we were anti-Trump
and at that point, he engaged me directly in
conversation because I assumed I was the only
Canadian," he said.

Decunha elaborated as to why he didn't support
Trump and talked about the Affordable Care Act
and other policies he disagreed with.

The line of questioning veered towards whether
they had been to the Middle East and if they
believe in violence. Decunha said he thought the
officer was trying to figure out if they were
radicalized.

By using this site, you agree to the **Privacy Policy** and **Terms of
Service**

 ⌄

Decunha was told that he was denied entry to the US.

**NEWS ALERT**                                                           ✕

The officer used the term "silent disruption" as the reason, and Decunha said he "kept dropping that though it was a verifiable law or regulation to not let me in the country."

Angered by the denial, Decunha's partner, who is American, began arguing with the officer. During that exchange, the border patrol officer said Decunha couldn't come into the country under the purpose of tourism.

Decunha said he was told, "If you would've said you were pro-Trump, that would've put you in the tourist bin and would have been allowed entry."

His two American travel companions were allowed entry, but Decunha said he was denied. He was fingerprinted and photographed before he was allowed to return home.



CNN contacted the US Border Patrol and Customs, but has not received a response.

Another Canadian told CNN a similar story, also at a border crossing in Quebec.

Sasha Dyck said he was part of a group comprised of six Canadians and two French nationals who organized a trip to Washington for the Women's March.

They arrived at the border on Thursday and when Dyck mentioned the march, the whole group was pulled over for inspection.

They had to submit their phones and passports, he said. Then, their fingerprints and photographs were taken.

**Related Article:** Trump issues executive order to start rolling back Obamacare

The border patrol guard was "quite curt," said Dyck, a research nurse at a Montreal children's hospital.

They got their items back and Dyck said he was told: "If you're trying to re-enter this weekend, you'll be arrested."

Unable to enter the US, Dyck ended up going to a woman's march in Montreal instead.

"It was just a surprise. I usually think of the [US] as open to diversity of ideas and opinions, but not this weekend," he said.



Teen wrote a final journal entry before crash that claimed her life

Not a dry eye as a teen gets a birthday gift his late father left him

By using this site, you agree to the **Priv_____ ___ ____** and **Terms of Service**                    ⌄

News   Voices   Sports   Q 

News › World

# Women's March: British and Canadian anti-Trump protesters denied entry to US by border guards

'They took my phone and started going through my texts. They searched the car and then they asked the driver if he practised Islam and if he spoke Arabic.'

Chloe Farand | Saturday 21 January 2017 17:30 GMT | 💬



**29K**
shares

| Like | Click to follow
The Independent Online





Protesters gather during the Women's March on Washington *Getty Images*

Canadian and <u>British</u>    protesters heading to the Women's
March in Washington have been denied entry to the United
States.



Joe Kroese, a British man studying in Montreal, told the
*Independent* he was refused entry into the country after a border

News    Voices    Sports

agent told him he was planning to attend a "potentially violent rally".

There were reports of other groups of would-be protesters being denied entry into the US at a land crossing in Quebec after being searched, fingerprinted and photographed.



0:00  /  0:15

Police officers high-five demonstrators on women's march

Mr Kroese, originally from Newcastle and studying at McGill University, said he was questioned by security staff for three hours at the border.

## READ MORE

Donald Trump will be the most interventionist president in decades

What Donald Trump has planned on his first full day as President

Why Donald Trump dancing to 'My Way' with Melania was actually perfect

The women's march won't change anything. That's not its purpose

The 23-year-old was travelling with a Canadian and two US nationals and the group had planned to go to the Women's March in Washington after a short stop in New York.

Mr Kroese and his Canadian friend were refused entry, fingerprinted and photographed before being advised not to travel to the US for several months. They were also told they would need a visa the next time they came.

News   Voices   Sports

"They took my phone and started going through my texts. There was another group of Canadians there that were also going to the march and were being refused entry," he said.

"They searched the car and then they asked the driver if he practised Islam and if he spoke Arabic. They wanted to spook us a bit. It felt like a kind of intimidation."

⌖ **In pictures: Women of the world march against Trump**

‹                                                          ›

◉ 32

show all

News   Voices   Sports

Montrealer Joseph Decunha was also turned away for "administrative reasons" after he told a border agent he planned to go to the inauguration and the Women's March in Washington.

"The first thing he asked us point blank is, 'Are you anti- or pro-Trump? It felt like, if we had been pro-Trump, we would have absolutely been allowed entry," he told the Canadian Broadcasting Corporation.

Border agents told him that if he tried again to enter the US this weekend, he would be refused.

Sasha Dyck, of Montreal, reported a similar experience to *the Guardian*.



READ MORE

**Thousands protest in London at Women's March against Donald Trump**

She had arranged to travel with a group of eight, including six Canadians and two French people to Washington for the march.

News    Voices    Sports

But when the group arrived at the border crossing and told the border agents about their plans, their cars were pulled over to the side and searched, their mobiles phones examined and each member of the group was fingerprinted and had their photo taken.

The two French citizens were denied entry and also informed that there would need a visa for any future visit to the US.

The rest of the group was told to "head home" and that if they tried to cross the border again during the weekend, they would be arrested, Ms Dyck told the *Guardian*.

*The Independent* has contacted the US Customs and Border Protection for comment.

More about:  |  women's march |  UK |  Canada |  nationals |  US border

Reuse content

Sponsored Links by Taboola

**He Ran to his Car Thinking he Received a Ticket... But it was a ...**
OMG Check It Out

**The Most Beautiful Interracial Couples In Hollywood**
College Freakz

**The Moment When This Pit Bull Realizes He's Being Given Up ...**
Scribol

**There Are 7 Types of Irish Last Names — Which One Is Yours?**
Ancestry

EXHIBIT C

Paul F. Kilmer
3609 Appleton Street, NW
Washington, D.C. 20008
Office: (202) 663-7269
Email: paulkilmer@msn.com

March 13, 2017

Ms. Sabrina Burroughs
FOIA Officer/Public Liaison
c/o U. S. Customs & Border Protection (CBP)
1300 Pennsylvania Avenue, NW, Room 3.3D
Washington, D.C. 20229

RE: CBP-2017-026542
(Previously: CBP-OFO-2017-026542 and Others)
FOIA Request of January 29, 2017,
to Customs and Border Protection -
Canadians denied entry to the United States

Dear Ms. Burroughs:

As noted in the attached submissions and communications with U.S. Customs & Border Protection (CBP) and the Department of Homeland Security, I am following up on my referenced FOIA request of January 29, 2017, to which no response has been received to date.

To avoid any unfortunate misunderstandings regarding the intentions of the CBP, I would appreciate receiving your response by **close of business on Monday, March 20, 2017**. I hereby provide my consent to communicate with me by email. Note also that there is a voice message system at the telephone number provided above and that messages may be left at that number at any time.

Thank you for your attention to this matter.

Sincerely yours,

Paul F. Kilmer

Via First Class Mail

EXHIBIT D

# Final Disposition, Request CBP-2017-026542

## CBPFOIA@cbp.dhs.gov

Fri 3/17/2017 3:09 PM

Inbox

To: paulkilmer@msn.com <paulkilmer@msn.com>;

90 K Street NE
MS 1181
Washington, DC 20229

Alicia Caldwell
The Associated Press
1100 13th St NW
Washington, DC 20005

March 17, 2017

Dear Ms. Alicia Caldwell,

This is a final response to your Freedom of Information Act (FOIA) request to U.S. Customs and Border Protection (CBP).

We conducted a comprehensive search of files within the CBP databases for records that would be responsive to your request. Unfortunately, we were unable to locate or identify any responsive records, based upon the information you provided in your request.

This completes the CBP response to your request. You may contact a FOIA Public Liaison by sending an email via your FOIAonline account, or call 202-344-1610. Please notate file number CBP-2014-017383 on any future correspondence to CBP related to this request.

If you are not satisfied with the response to this request, you have a right to appeal the final disposition. Should you wish to do so, you must file your appeal within 90 days of the date of this letter following the procedures outlined in the DHS regulations at Title 6 C.F.R. §5.9. Please include as much information as possible to help us understand the grounds for your appeal. You should submit your appeal via FOIAonline by clicking on the "Create Appeal" button that appears when you view your initial request. If you do not have computer access, you may send your appeal and a copy of this letter to: FOIA Appeals, Policy and Litigation Branch, U.S. Customs and Border Protection, 90 K Street, NE, 10th Floor, Washington, DC 20229-1177. Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia. Additional information can be found at the following link https://www.cbp.gov/document/guidance/exemption-definitions.

Additionally, you have a right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974. You may contact OGIS as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

U.S. Customs and Border Protection

EXHIBIT E

Paul F. Kilmer, Esq.
3609 Appleton Street, NW
Washington, D.C. 20008
Email:  paulkilmer@msn.com
Phone:  (202) 663-7269

April 8, 2017

**FOIA Appeals**
Policy and Litigation Branch
U.S. Customs and Border Protection
90 K Street, NE, 10th Floor
Washington, DC 20229-1177

**FOIA APPEAL**

RE:  FOIA Request CBP-2017-026542
 (Previously:  CBP-OFO-2017-026542 and Others)
FOIA Request of January 29, 2017,
to Customs and Border Protection -
Canadians denied entry to the United States

To Whom It May Concern,

As noted in the attached submissions and communications with U.S. Customs & Border Protection (CBP) and the Department of Homeland Security, I am following up on my referenced FOIA request of January 29, 2017, to which no response has been received to date.

Also attached is an email communication I received from CBP on March 17, 2017, denying someone else's FOIA request but sent to me under the number assigned to my case.  That March 17th communication relates to CBP-2014-017383, filed by one Alicia Caldwell of The Associated Press.

Subsequent to receiving the response to Ms. Caldwell's FOIA request on March 17th, I contacted CBP's FOIA telephone number ((202) 344-1610) on three occasions and two of my calls were returned by a person identifying himself only as "Don."  Those calls from "Don" occurred on March 22, 2017 and April 3, 2017. Despite "Don's" agreement to look into obtaining an appropriate response to my FOIA request, I have not, as yet, received the requested information and material.

To avoid any unfortunate misunderstandings regarding the intentions of the CBP, I would appreciate receiving your response to this FOIA APPEAL by **close of business on Friday, April 28, 2017**.  I hereby provide my consent to communicate with me by email.  Note also that there is a voice message system at the telephone number provided above and that messages may be left at that number at any time.

Thank you for your attention to this matter.

Sincerely yours,

Paul F. Kilmer

Via First Class Mail

EXHIBIT F



U.S. Customs and
Border Protection

2017-026542

March 15, 2017

Paul F. Kilmer
3609 Appleton
Street, NW
Washington, DC
20008

Dear Mr. Kilmer:

This is a final response to your Freedom of Information Act (FOIA) request to U.S. Customs and Border Protection (CBP) requesting information pertaining to the women's marches.

We conducted a comprehensive search of files within the CBP databases for records that would be responsive to your request. Unfortunately, we were unable to locate or identify any responsive records, based upon the information you provided in your request.

If you are not satisfied with the response to this request, you have a right to appeal the final disposition. Should you wish to do so, you must file your appeal within 90 days of the date of this letter following the procedures outlined in the DHS regulations at Title 6 C.F.R. §5.9. Please include as much information as possible to help us understand the grounds for your appeal. You should submit your appeal via FOIAonline by clicking on the "Create Appeal" button that appears when you view your initial request. If you do not have computer access, you may send your appeal and a copy of this letter to: FOIA Appeals, Policy and Litigation Branch, U.S. Customs and Border Protection, 90 K Street, NE, 10th Floor, Washington, DC 20229-1177. Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

Sincerely,

Timikia Pegues
Government Information Specialist
Privacy & Diversity Office



U.S. Customs and
Border Protection

1300 PENNSYLVANIA AVE, NW, MS _118/_
WASHINGTON, DC 20229

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE $300

Fenn Oliveira

Paul F. Kilmer
3609 Appleton Street NW
Washington, DC 20008

2000682560 CODE

$000.4



Hasler

04/27/2017

US POSTAGE $000.46⁰

FIRST-CLASS MAIL

US OFFICIAL MAIL
S 300 Penalty
For Private Use

ZIP 20748
011D12500058

EXHIBIT G

Paul F. Kilmer, Esq.
3609 Appleton Street, NW
Washington, D.C. 20008
Email:  paulkilmer@msn.com
Phone:  (202) 663-7269

June 10, 2017

**FOIA Appeals**
Policy and Litigation Branch
U.S. Customs and Border Protection
90 K Street, NE, 10th Floor
Washington, DC 20229-1177

**FOIA APPEAL**

RE:  FOIA Request CBP-2017-026542
 (Previously:  CBP-OFO-2017-026542 and Others)
FOIA Request of January 29, 2017,
to Customs and Border Protection -
Canadians denied entry to the United States

To Whom It May Concern,

This constitutes an appeal in relation to my FOIA requests of January 29, 2017 (see **Exhibit A** hereto).

As noted in the attached letter from U.S. Customs and Border Protection (CBP) dated March 15, 2017 (**Exhibit B**), a purported comprehensive search of the CBP's files was "unable to locate or identify any responsive records" in relation to my FOIA requests.

As a first order of business, although CBP's letter to me is dated March 15, 2017, the envelope in which that letter was contained (**Exhibit C**) is clearly postmarked "04/27/2017." Thus the appeal period in relation to my FOIA request should be calculated from April 27, 2017, not March 15, 2017.

As to the substance of my FOIA requests to CBP, those requests asked for:

1. Documents referring to, relating to or mentioning the Women's March (or Women's Marches) scheduled to be held on January 21, 2017, that also mention or refer to persons entering or who might enter the United States from Canada.

2. Documents mentioning, referring to or otherwise relating to any person or persons denied entry to the United States from Canada on January 19, January 20 or January 21, 2017, including the reason or reasons such persons were denied entry to the United States.

FOIA APPEAL
Paul F. Kilmer
FOIA Request CBP-2017-026542
June 10, 2017
P a g e | **2**

3. Documents consisting of, referring to or relating to orders, directives, guidance or
suggestions of any nature that persons attempting to enter the United States from Canada
on January 19, January 20 or January 21, 2017, should be barred from entry if such
persons might be entering the United States to participate in the Women's March.

4. Documents consisting of, referring to or relating to communications (verbal or in writing)
from any person or persons alleging that they were denied entry into the United States
from Canada on January 19, January 20 or January 21, 2017.

5. Documents consisting of a report, memorandum or communication from any official,
officer, employee or contractor of the CBP regarding persons denied entry to the United
States from Canada on January 19, January 20 or January 21, 2017.

6. Documents consisting of, including or mentioning any communications (verbal or in
writing) from officials or employees of any branch, division, agency or other body of the
government of Canada, or any Province or municipality thereof, regarding allegations that
persons were denied entry to the United States from Canada on January 19, January 20 or
January 21, 2017.

Numerous press reports support the conclusion that persons attempting to the enter
the United States from Canada on the dates relevant to my request were denied entry.
Copies of some of those press reports are attached as **Exhibit D** hereto and links to a
selection of such press reports may be found at:

http://www.cbc.ca/radio/asithappens/as-it-happens-friday-edition-1.3944955/we-didn-t-have-
anything-to-hide-canadian-heading-to-women-s-march-refused-entry-to-u-s-1.3944962

http://www.cnn.com/2017/01/21/us/canadians-rejected-border-womens-march/

https://www.washingtonpost.com/news/worldviews/wp/2017/01/21/u-s-border-agents-turned-
away-canadians-hoping-to-come-to-the-womens-march/?utm_term=.76c3651552a5

https://www.theguardian.com/world/2017/jan/20/womens-march-canada-protesters-denied-
entry-us

http://www.independent.co.uk/news/world/uk-canadian-womens-march-protesters-denied-
entry-us-montreal-border-agents-a7539341.html

http://www.huffingtonpost.ca/2017/01/21/canadian-us-border_n_14306832.html

Based on the response to my FOIA request received from CBP, it would appear that,
contrary to these press reports, CBP records indicate that <u>no</u> persons from Canada who

FOIA APPEAL
Paul F. Kilmer
FOIA Request CBP-2017-026542
June 10, 2017
Page | 3

wished to participate in the Women's March were denied entry into the United States on January 19, 20 or 21, 2017.  One must therefore assume that all of the foregoing press reports and others detailing the same sorts of denials of entry to the United States on the relevant dates were in error and that I may so advise all of the relevant press outlets to that effect (i.e. that their sources were providing untruthful information regarding their alleged denials of entry to the United States on January 19, 20 or 21, 2017).

In relation CBP's assertion that it has no records responsive to my requests 2 and 5, above, it thus appears that no persons from Canada were denied entry to the United States for <u>any</u> <u>reason</u> on January 19, 20 or 21, 2017.  This would appear to put CBP on the record as allowing into this country <u>anyone</u> seeking entry from Canada on January 19, 20 or 21, 2017, no matter whether such persons had the required documents substantiating their identity or were on a terrorist watch list.  I find this difficult to believe.

Note that CBP's denial that there are records responsive to my requests 2 and 5, above, might also indicate that the CBP does not make a written record of persons turned away from entry to the U.S. at the Canadian border.  I also doubt that is the case.

It also appears that CBP has never had in its possession any communications from any branch of the government of Canada regarding allegations that persons from Canada were denied entry to the United States on January 19, 20 or 21, 2017, whether for purposes of participating in the Women's March or otherwise (see my request 6, above).  Therefore it would seem that the government of Canada was not concerned that its citizens were barred from entry into the United States for purposes of peaceful assembly and a march in support of women's rights, a fact that I am sure the Canadian government may be surprised to learn.

At bottom, it more-than-strains credulity for the CBP to assert it is "unable to locate or identify any responsive records" to my FOIA requests.  In fact, failure to make or retain at least certain of the requested records would appear to constitute a dereliction of duty on the part of CBP officers, officials and employees.  I therefore respectfully request that CBP redouble its efforts to locate documents and information responsive to my FOIA requests.

To save time, please also provide a Vaughn Index consisting of an itemized, indexed inventory of every agency record or portion thereof responsive to my FOIA requests which you assert to be exempt from disclosure, accompanied by a justification statement covering each such refusal to release records or portions thereof in accordance with the indexing requirements of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974).

To avoid any unfortunate misunderstandings regarding the intentions of CBP, I would appreciate receiving your response to this **FOIA APPEAL** by **close of business on Friday, June 30, 2017**.  I hereby provide my consent for you to communicate with me by

FOIA APPEAL
Paul F. Kilmer
FOIA Request CBP-2017-026542
June 10, 2017
Page | 4


email (at paulkilmer@msn.com).  Note also that there is a voice message system at the telephone number provided above and that messages may be left at that number at any time.

   I look forward to hearing from you regarding this appeal.  Thank you for your attention to this matter.

          Sincerely yours,

          Paul F. Kilmer

Via First Class Mail